## McCandless to use *versus* Engle *et ux.*

51  309|
192   3

1. Where fraud or duress has been practised in obtaining a wife's acknowledgment to a deed, and the knowledge of it, or of such circumstances as would lead to inquiry, has been brought home to the grantee, it will avoid the acknowledgment.

2. Less than actual duress will avoid the acknowledgment of a wife, if it be known to the party claiming through it or when he ought to have inquired for defences and did not, as in case of taking an assignment of a mortgage.

3. The acknowledgment will be avoided if the wife made it under moral constraint; that is, by threats, persecution and harshness of her husband to force her to to set aside her own free will and comply unwillingly with his wishes.

[McCandless *v.* Engle.]

4. The acknowledgment of the wife must be taken out of the presence of the husband where he cannot see or hear any indication of unwillingness on her part to execute or acknowledge the instrument; otherwise she has no opportunity to escape the coercion.

ERROR to the Court of Common Pleas of *Indiana county*, in which this was a *scire facias sur mortgage* by T. M. McCandless for the use of James Sutton, against John Engle and Rachel his wife.

The mortgage was made July 23d 1857 by John Engle and wife to Thomas M. McCandless on a tract of land alleged to be the separate property of the wife, the principal question arising both on the admission of evidence and the instructions of the court as to the validity of the acknowledgment of the wife. The certificate of the justice was regular and showed an acknowledgment in accordance with the Act of Assembly. The defence was by the wife.

To invalidate the certificate of acknowledgment, the defendants, under objection, proved by Thomas Engle: "I am a son of the defendants; I was there when McCandless was there about this mortgage; father asked her to sign it. She said she did not like to; this was on the same day it was signed. McCandless and Evans were out at the barn at the time. Father said she must do it; she said she would if she had to; she cried about it. At several times during the day, before that, he wanted her; she still said she did not like to do it. It was not long after she refused and he said she must sign it, till McCandless and Evans came in. I saw her sign it. Mr. Patterson, McCandless, Evans and myself were present, and my father, all in one room, when she signed it. Cannot remember whether the mortgage was read. Father was present all the time it was being acknowledged before Squire Patterson. Father told mother, if McCandless asked her anything about it she should not say anything. I don't know of her being out of the room till McCandless and Evans came in. She was sick at the time. She was just able to walk about, and that was about all. The mortgage was for father's debt. I still got goods from the store on father's order. It was a store account. McCandless kept a store in Greenville. Don't know of anything else in the mortgage. It was not long, some days before, father was importuning her to sign it."

Another witness proved that the husband was present when the justice took the acknowledgment; that McCandless said to witness that he did not know whether the wife would sign, but he would see; that after he came out of Engle's house he said he would send for the justice anyhow; that witness heard no objection to signing while he was in.

The justice who took the acknowledgment testified: "At the

time I arrived at Mr. Engle's I found McCandless and Mr. Evans there. They told me that a mortgage was to be executed; I inquired whether it had been read, or its contents made known; several of them answered that they all understood it. I requested Mr. Evans to read the particular parts of it, as I then supposed he had filled it; he did so. I said, as they had been waiting a long time for me, we would make haste and fix the matter up. I told them if the parties were agreed, it was ready for their signatures. It was on the table. Mr. and Mrs. Engle came forward to the table together, Engle a little in advance. Mr. Engle put his name to it and stepped back behind the chair I was sitting on; I thought he had left the house. Mrs. Engle said she did not know whether she could write her name or not. I told her if she was willing to sign her name of her own accord to make the attempt, and if she could not write it, some one of us would write it for her. She took the pen and wrote her name—very willingly and very freely as I thought. I watched to see whether I could see any unwillingness on her part, but could see none. There was a good deal of hilarity and good humour. She appeared to be in a very good humour. Engle was some distance back when I spoke to her. I thought he was going into the room adjoining."

The court (Buffington, P. J.), on the question of the validity of the acknowledgment, charged :—

" But in the present case the defence is made by the wife alone, who claims the right in herself, and the only question is whether she has executed this mortgage in accordance with the rules of law.

" She signed the mortgage in the presence of competent witnesses, and acknowledged it before a proper officer. That certificate is in due form and contains all that is requisite to give it validity. The rule in such a case is that an innocent purchaser of a mortgage or a title, who pays his money on the faith of a regular deed, properly executed and acknowledged, takes the deed discharged of any secret imperfections not apparent on the face of the instrument. In other words the certificate is not only *primâ facie* but conclusive in the hands of an innocent and *bonâ fide* holder, who did not participate in any management or fraud or coercion, and who had no notice of it.

" But if the purchaser knew at the time he took the deed that the wife had been imposed upon or coerced by the husband ; or if he knew that there was any defect, in fact, in the acknowledgment, notwithstanding it was in due form, such knowledge, that the acknowledgment was not according to the fact, would take from him his *bonâ fide* character and affect him with notice.

" It is said she was coerced and forced to execute the mortgage, and the evidence of the son is relied on. His evidence is

[McCandless *v.* Engle.]

attacked, and the jury will judge of its truth.    If he is believed,
the husband requested her to sign it.    She said she did not like
to ; he said she must, when she cried and said if she must she
would, and he told her not to object when they asked her about
it.    To set aside a deed on such ground there must be a legal or
moral constraint of the wife's will by the husband.    He has a
right to induce her by reasonable persuasion, but not to constrain
or force her.    If he procures it to be done against her free will
by compulsion, or by moral or by legal constraint, it was void, if
the mortgagee knew it.    If, however, there was no such constraint
as to overcome her free will, but she was induced merely by per-
suasion, and executed it freely and voluntarily, it was available
to make the deed good ; and if McCandless did not know of any
coercion, he would not be affected.

" It is further contended, by the defendants, that the certificate
was false in alleging that she was examined separate and apart
from her husband.    The law requires that the wife's examination
should be separate and apart from her husband ; and it is said
that instead of such being the case, he was present in the room,
and within hearing distance, in other words, that he was actually
present ; and that McCandless was present and knew it.    This is
a question of fact for the jury.    If you believe the husband was
present in the room, within hearing distance, where his gestures
or countenance could be seen, and when by such means he might
influence her, the mortgage, as to her, would be void.    It was the
duty of the justice to see that all the requisites of the law were
complied with ; and to see that the examination was separate
and apart, and it was also the duty of the mortgagee if he was
present.

" It is further contended that James Sutton is an innocent
purchaser, and not affected by any coercion or frauds and defect
in fact of the acknowledgment ; we cannot think so.    This is not
a deed conveying an estate, but a mortgage merely, a security
for the payment of money, a chose in action ; and it is well
settled that an assignee of a security for the payment of money
or chose in action takes it with all defects, and subject to any
equities or defences that existed in the hands of the original
obligee or party."

The jury found for the plaintiff against John Engle $516.25,
and in favour of Rachel Engle.

The plaintiff having excepted, assigned for error the admission
of the evidence objected to, and the charge of the court on the
question of the acknowledgment.

*H. D. Foster* and *Stewart & Clark*, for plaintiff in error.—
It is dangerous at any subsequent time to invalidate an acknow-
ledgment regularly certified, and if admitted, should be allowed

[McCandless *v.* Engle.]

to affect only purchasers and mortgagees who had notice of the defect: Loudon *v.* Blythe, 3 Casey 22; Trimmer *v.* Heagy, 4 Harris 484. In Michener *v.* Cavender, 2 Wright 334, there were several circumstances indicating that the mortgagee had notice. Schrader *v.* Decker, 9 Barr 14, will not establish the principle relied on.

The judge below took an unsound distinction between the case of the orignal mortgagee and his assignee. The wife's claim to relief here is an equitable one, and if from any act or supineness of hers, equities have grown up in third persons, her claim would not avail. Why did she delay so long to have the mortgage cancelled, if invalid? She should not be successful, if she and her husband combined that she should manifest no unwillingness. The court's charge assumes that a separate examination cannot be had unless the husband is out of the room. All that is required is, that the husband leave the justice and the wife together.

*H. W. Weir* and *J. M. Thompson*, for defendants in error.— The authorities sustain the ruling of the judge: Schrader *v.* Decker, 9 Barr 14. Parol evidence is admissible to show that the acknowledgment was not of the wife's free will: Louden *v.* Blythe, 4 Harris 532; s. c. 3 Casey 22; Barnet *v.* Barnet, 15 S. & R. 72–73; Michener *v.* Cavender, 2 Wright 337. "Separate and apart" means in the *absence* of the husband.

An assignee of a mortgage is bound to inquire if the mortgagor has any defence; if he does not, he is in no better condition than his assignor.

The opinion of the court was delivered, April 2d 1866, by

THOMPSON, J.—In Michener and Wife *v.* Cavender, 3 Wright 337, almost the identical questions raised here were then determined, and against the position taken here by the plaintiff in error. My brother Woodward, in delivering the opinion of the court in that case, said, "In cases of fraud and imposition, or duress, parol evidence has been freely admitted to overthrow the certificate (of acknowledgment), as in Schrader *v.* Decker, 9 Barr 14; Louden *v.* Blythe, 4 Harris 532; Same *v.* Same, 3 Casey 25;" to which I may add Daily *v.* Foster, 2 Wall. U. S. Rep. 24: "And where fraud and duress has been practised in obtaining the acknowledgment, and the knowledge of it has been brought home to the grantee, or of such circumstances as would lead him to inquire upon the point," it will avoid it.

Less than actual duress will avoid an acknowledgment of a conveyance or mortgage by a wife, provided, as said above, it be known to the party claiming through it, or where he ought to have inquired for defences and did not, as in case of taking an assignment of a mortgage. It is enough if it be shown that the wife

[McCandless *v.* Engle.]

did it under moral constraint; that is, by threats, persecution and harshness of her husband to force her to set aside her own free will, and comply unwillingly with his wishes. To bind her she must be examined separate and apart from her husband, and then and there declare that her execution of the instrument is of "her own free will and accord, and without any coercion or compulsion on the part of her said husband." Whenever her acknowledgment is procured in violation and disregard of these absolute requirements, it is void, and this may be shown, as the cases cited above establish, by parol proof.

If there ever was a case of coercion within the meaning of the statute, it was here. Not only was this known to the mortgagee, but no opportunity was afforded the wife to escape it, for the husband was permitted to be present, where he could see and hear every indication of unwillingness on her part to execute or acknowledge the mortgage. The magistrate under the circumstances certified to two misstatements, each destructive of the object of the law in providing for the separate examination of married women. The court was entirely right in admitting the testimony to establish these facts, and in allowing to them the effect of invalidating the acknowledgment, if believed by the jury.

The case of Michener and Wife *v.* Cavender also settles the other point of the case, namely, whether the assignee of the mortgage is to be effected by the facts invalidating the acknowledgment. It is settled in that case that it was his duty to have inquired of the mortgagors if there was any defence to the mortgage, and failing to do so, took the risk on himself of such a defence, as well as any other which the mortgagors might legally or equitably have. We see no reason why the rule is not as applicable to this species of defence as any other allegation of want of due execution; and holding that, the assignee who is the equitable plaintiff here, failing to observe the precaution, cannot complain of want of notice of the defect in executing the mortgage. A different rule applies to conveyances of real estate. A mortgage is only so, however, in form, while in fact it is but a security for money.

> We see no error in the record, and the judgment is affirmed.